**John F. LE BUS, Regional Director of the Fifteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD,**

**v.**

**BUILDING AND CONSTRUCTION TRADES COUNCIL OF MONROE AND VICINITY, Affiliated with AFL-CIO.**

**Civ. A. No. 7956.**

United States District Court
W. D. Louisiana,
Monroe Division.
Aug. 16, 1960.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Winthrop A. Johns, Asst. Gen. Counsel, Washington, D. C., Charles M. Paschal, Jr., Regional Atty., Region 15, New Orleans, La., George J. Brannick, Atty., N. L. R. B., Washington, D. C., C. Dale Stout, Atty., New Orleans, La., for petitioner.

Burt W. Sperry, Shotwell & Brown, Monroe, La., for Ford, Bacon & Davis Construction Corporation, Don A. Bax-

ter, d/b/a Don A. Baxter & Son, Rannie Terrel, d/b/a Rannie Terrel Contractors.

Howell H. Heard, West Monroe La., for Jesse F. Heard & Sons, Inc.

Dodd, Hirsch, Barker & Meunier, New Orleans, La., for respondent.

BEN C. DAWKINS, Jr., Chief Judge. This cause came on to be heard upon the verified petition of John F. LeBus, Regional Director of the Fifteenth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160(*l*) pending the final disposition of the matters involved herein pending before the Board and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on August 15, 1960. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issue, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court makes the following:

## Findings of Fact.

1. Petitioner is Regional Director of the Fifteenth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about August 5, 1960, Ford, Bacon & Davis Construction Corporation, (herein called Ford), Don A. Baxter and James D. Baxter, doing business as Don Baxter and Son (herein called Baxter), Jesse F. Heard & Sons, Inc., (herein called Heard), and Rannie Terrel, doing business as Rannie Terrel Contractors (herein called Terrel), pursuant to provisions of the Act, filed amended charges with the Board to charges originally filed on July 29, 1960, said amended charges alleging that Building & Construction Trades Council of Monroe and Vicinity, affiliated with AFL–CIO (herein called Council or respondent), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4), subparagraphs (A) and (B), of the Act, 29 U.S.C.A. § 158(b) (4) (A, B).

3. The aforesaid charges and amended charges were referred to petitioner as Regional Director of the Fifteenth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that: (a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal office at Monroe, Louisiana, and at all times material herein has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Ford, Baxter, Heard and Terrel are members of Northeast Louisiana Chapter, Associated General Contractors of America (herein called AGC), an employers' association in the construction industry, one of whose principal purposes is to represent its members in collective bargaining with labor organizations and negotiate collective bargaining contracts for its members. In the operation of their businesses, Ford, Baxter, Heard and Terrel each annually receives goods and materials from outside the State of Louisiana valued at in excess of $50,000. Ford, a multistate concern, annually performs services in excess of $50,000 for firms which each ship products outside the State of Louisiana valued at in excess of $50,000.

(d) Riley Stoker Corp., Bayou Electric Company, Portman Steel Construction

Company, McElroy Electric and Supply Company, J. D. Moses Painting and Decorating Contractor, Pogue Atkins Company, Inc., Monroe Brick & Builders Supply Company, Raymond Concrete Pile Division, Raymond International, Inc. (herein collectively called subcontractors) are suppliers of Ford, Baxter, Heard and Terrel on their construction projects in the Monroe Area.

(e) Ford, Baxter, Heard and Terrel, through membership in AGC, are bound by current contracts with several building and construction trades local unions which are constituent members of respondent Council, to wit, the locals of: United Brotherhood of Carpenters and Joiners of America, AFL–CIO, (Locals 1811, 2032 and 2192), International Hod Carriers, Building and Common Laborers Union of America, AFL–CIO (Local 831), International Union of Operating Engineers, AFL–CIO (Local 406), International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO (Local 710). In addition Ford has national agreements with United Brotherhood of Carpenters and Joiners of America, AFL–CIO, and United Association of Journeymen and Apprentices in the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO. Some of the subcontractors have agreements with or obtain men from the aforesaid local unions and from other building and construction trades local unions which are constituent members of respondent Council, including the local union of the International Brotherhood of Electrical Workers, AFL–CIO.

(f) Since prior to July 27, 1960, respondent Council has demanded that Ford, Baxter, Heard and Terrel enter into a contract, a copy of which is appended, which, among other things, would require them not to do business with the subcontractors and other persons unless said subcontractors and other persons agree to abide by the terms of the contract demanded of Ford, Baxter, Heard and Terrel, which provides in part as follows:

"The contractor shall not sublet, subcontract or assign any of the work which comes under the jurisdiction of the Council or its member local unions to any persons, firm or corporation, unless such person, firm or corporation agrees in writing to abide by the Master Agreement and the Craft Agreement covering such work. This Article shall apply only to that work subcontracted, sublet or assigned directly by the contractor to such person, firm or corporation, and shall not apply to work subcontracted, sublet or assigned by such person, firm or corporation to another person, firm or corporation";

and to submit any disputes over work jurisdiction to the International General Headquarters of the Building and Construction Trades Department, AFL–CIO, and be bound by its decision.

(g) In furtherance of the aforesaid demands on Ford, Baxter, Heard and Terrel and to compel them to enter into the aforementioned contract, respondent Council, since on or about July 27, 1960, has picketed the construction projects of Baxter, Heard and Terrel and since July 29, 1960, the construction projects of Ford, and has ordered, instructed, directed, requested and appealed to the employees of Ford, Baxter, Heard, Terrel and their subcontractors, and other persons, not to cross the picket line and not to perform services for their employers.

(h) As a result of respondent's picketing and other conduct aforesaid a very substantial amount of construction work in the Monroe, Louisiana, area has been shut down.

(i) By the acts and conduct set forth in findings of fact 4(h) and (i) above, respondent has engaged in, and has induced and encouraged individuals employed by Ford, Baxter, Heard, Terrel, the subcontractors, and by other persons engaged in commerce or in industries affecting commerce to engage in strikes or refusals in the course of their employment to perform services, and have

coerced and restrained Ford, Baxter, Heard, and Terrel.

(j) Objects of the acts and conduct of respondent set forth in findings of fact 4(f), (g), (h) and (i) above, were and are (1) to force or require Ford, Baxter, Heard and Terrel to enter into an agreement prohibited by Section 8(e) of the Act, which would force Ford, Baxter, Heard, Terrel, and other persons to cease doing business with their subcontractors and other persons.

5. The acts and conduct of respondents set forth in findings of fact 4(f), (g), (h), and (i) above, occurring in connection with the operations of Ford, Baxter, Heard and Terrel have a close, intimate and substantial relation to trade, traffic, and commerce among the several States and tend to lead to and do lead to labor disputes burdening and obstructing commerce and the free flow of commerce.

6. .It may fairly be anticipated that, unless enjoined, respondent will continue and repeat the acts and conduct set forth in findings of fact 4(f), (g), (h), (i) and (j) above, or similar or like acts and conduct.

### Conclusions of Law.

1. This Court has jurisdiction of the parties and of the subject matter of this proceeding; and under Section 10(l) of the Act it is empowered to, and should, grant injunctive relief.

2. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act, 29 U.S.C.A. §§ 152(5), 158(b), 160(l).

(b) Ford, Baxter, Heard and Terrel are engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(c) The subcontractors named are engaged in commerce or in an industry affecting commerce.

(d) Respondent has engaged in unfair labor practices within the meaning of Section 8(b), (4) (i) and (ii), subparagraphs (A) and (B) of the Act, af- fecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b), 29 U.S.C.A. § 141(b), thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with it or them be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in findings of fact 4(f), (g), (h), and (i) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

### Appendix.

Master Agreement
By and Between
Building and Construction Trades
Council of Monroe and Vicinity,
Affiliated with the AFL–CIO
and
Building and Construction Contractors
of Monroe and Vicinity

### I.

This Agreement is made for the mutual benefit of the parties hereto in order to establish wages, working hours, working conditions, and to stabilize employment on the building and construction industry within the parishes composing the Fifth Congressional District of Louisiana.

### II.

*Section 1.* The parties to this Agreement are the following:

(a) Those contractors signatory therein.

(b) The Building and Construction Trades Council of Monroe and Vicinity, affiliated with the AFL–CIO, hereinafter

referred to as the Council, on behalf of its member local unions.

*Section 2(a).* The term Master Agreement shall mean this Agreement. The term Craft Agreement shall mean those agreements entered into between the Contractors or other contracting groups and the individual member local unions covering wages, hours and working conditions.

### III.

The geographical scope of this Agreement shall cover all of the parishes composing the Fifth Congressional District of Louisiana provided, however, that it is understood and agreed that the Craft Agreements may show the geographical jurisdiction of each individual craft which in some cases may differ from the area covered by the Council.

### IV.

*Section 1.* On or after the seventh day from the effective date of this Agreement or the seventh day from the date of his employment, whichever is later, each employee covered hereby or covered by a Craft Agreement shall become and remain a member in good standing (within the meaning of applicable law) of the member local union of the craft within which he works. Upon written notice from an authorized union official, the contractor shall discharge any employee covered hereby or by a Craft Agreement who fails so to become and remain a member in good standing (within the meaning of applicable law) of the member local union of the craft within which he works.

*Section 2.* The contractor shall not be obligated to discharge any employee for non-membership in the local union provided that he has any reasonable grounds for believing that such membership was not available to such employee on the same terms and conditions generally applicable to other members of such local union, or provided that the contractor has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of such employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership in such local union.

### V.

Contractor hereby recognizes the respective member local unions affiliated with the Council as the sole representative of the contractor's employees covered by this Agreement or the Craft Agreements for the purpose of collective bargaining with the contractor.

### VI.

The Contractor shally comply with the wages, hours and working conditions specified in each of the Craft Agreements covering each craft respectively whether or not a contractor has signed such Craft Agreements.

### VII.

There shall be no work stoppages due to jurisdictional disputes. In the event a dispute arises which cannot be settled immediately by the Council, the contractor and the local member unions involved, the craft working will continue working on such job pending a decision of the International General Headquarters of the Building and Construction Trades Department, AFL–CIO, which decision shall be binding on all parties.

### VIII.

The contractor shall not sublet, subcontract or assign any of the work which comes under the jurisdiction of the Council or its member local unions to any persons, firm or corporation, unless such person, firm or corporation agrees in writing to abide by the Master Agreement and the Craft Agreement covering such work. This Article shall apply only to that work subcontracted, sublet or assigned directly by the contractor to such person, firm or corporation, and shall not apply to work subcontracted, sublet or assigned by such person, firm or corporation to another person, firm or corporation.

### IX.

It is agreed by the parties of this Agreement that if any Article or any Section of any Article, or any provision

of any Section, or any combination of any provisions of this Agreement be rendered or declared illegal by reason of any existing or subsequently enacted national, state, or local law, or by a decree of a Court of competent jurisdiction, such invalidation of such part or portion of this Agreement shall not invalidate the remaining provisions of this agreement and all remaining provisions shall continue to be operating and binding on the parties hereto. In the event any provisions of this Master Agreement should so be declared illegal, then the parties shall meet and negotiate new provisions which meet the legal requirements.

### X.

This Agreement shall be effective on ——— day of ——— 1960, and shall continue in effect through ——— day of ——— 19—, and shall continue in force and effect from year to year thereafter unless the contractor or the Council shall notify the other in writing at least 60 days prior to the expiration of the term or any extended term of this Agreement of termination; provided, however, this Agreement shall not be binding between the parties with respect to any one or more of the member local unions during any period in which no binding Craft Agreement covering such local member union or unions is in effect. If any party gives notice of termination as aforesaid, it shall be in writing, registered mail and deposited [sic] in the United States mail, addressed to the last known mailing address of the other party.